FILED - GR
November 17, 2011 2:45 PM
TRACEY CORDES CLERK
U S DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

BY _JSJ_ / _____ SCANNED BY _ll/21_

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**1:11-cv-1222**

**Janet T. Neff**
**U.S. District Judge**

CHRIS BUSSELL,

Plaintiff,

v.

INTEGRITY FINANCIAL
PARTNERS, INC.,

Defendant.

_____/

## Complaint

### I. Introduction

1.    This is an action for damages, brought against a debt collector for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and Michigan

Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

### II. Jurisdiction

2.    This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C.

§ 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28

U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place

here.

### III. Parties

3.    Plaintiff Chris Bussell is a natural person residing in Kent County, Michigan.

Miss Bussell is a "consumer" and "person" as the terms are defined and/or used in the FDCPA.

Miss Bussell is a "consumer," "debtor" and "person" as the terms are defined and/or used in the

1

MOC.

4.     Defendant Integrity Financial Partners, Inc. ("IFP") is a Kansas corporation. The registered agent for IFP in Michigan is CSC-Lawyers Incorporating Service (Company), 601 Abbott Road, East Lansing, Michigan 48823. IFP uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. IFP regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. IFP is a "debt collector" as the term is defined and/or used in the FDCPA. IFP is licensed (Nos. 2401002247 and 2401002444) by the State of Michigan to collect consumer debts in Michigan. IFP is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

## IV.    Facts

5.     On June 24, 2004, a person named Rhonda K. Hartman, also known as A. K. Hartman, submitted an application to Stillwater National Bank ("Stillwater") for a student loan, to be underwritten by Sallie Mae. Miss Bussell also signed the application as a potential co-borrower. The application was sent for processing to Sallie Mae, P.O. Box 59030, Panama City, Florida 32412-9030.

6.     By letter dated August 3, 2004, Sallie Mae notified Ms. Hartman that her request to have Miss Bussell be a co-borrower for Ms. Hartman's student loan was denied because Miss Bussell did not meet certain eligibility requirements. The letter stated that Sallie Mae also had notified Miss Bussell that Miss Bussell's application to be a co-signer for Ms. Hartman's student loan was denied. The letter stated that if Sallie Mae received an application for a new, creditworthy co-borrower within 90 days, Sallie Mae would continue to process Ms. Hartman's

loan application.

7.     Miss Bussell never again signed any loan application, nor has she ever signed any promissory note or other document of any kind whatsoever, that would obligate her in any way as a co-signer or co-obligor for any loan of any kind whatsoever (including student loan) obtained by Ms. Hartman.

8.     Miss Bussell is not, and has never been, a co-borrower on any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

9.     Miss Bussell is not, and has never been, obligated to pay any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

10.    Apparently, Ms. Hartman later obtained a student loan from Stillwater. Apparently, Sallie Mae underwrote and/or purchased Ms. Hartman's student loan.

11.    In 2005, Miss Bussell lost track of Ms. Hartman and her whereabouts. Miss Bussell had only sporadic and occasional contact with Ms. Hartman over the next five years.

12.    Apparently, Ms. Hartman defaulted on her obligation to pay her student loan.

13.    On or about August 17, 2010, Miss Bussell went to the bank to become pre-qualified for a mortgage loan to purchase a home. As part of that process, the bank obtained Miss Bussell's credit reports and found that Sallie Mae was causing derogatory information regarding Ms. Hartman's unpaid student loan to be reported on Miss Bussell's credit reports, making Miss Bussell ineligible for a mortgage loan.

14.    At no time prior to August 2010 did Miss Bussell ever receive from Sallie Mae or any other entity, any contract, note, disclosure, billing statement, invoice, writing, document, telephone call or communication of any type whatsoever, stating or even suggesting that Miss

3

Bussell was somehow obligated to pay any student loan obtained by Ms. Hartman from Stillwater, Sallie Mae, or any other entity.

15.     On or about August 17, 2010, Miss Bussell communicated by telephone with Sallie Mae regarding Ms. Hartman's student loan. Sallie Mae would not discuss the matter with Miss Bussell, stating that the account had been turned over to a collection agency. Sallie Mae instructed Miss Bussell to contact Firstsource Financial Solutions, LLC ("FFS") at 888-891-9627.

16.     In August 2010, Miss Bussell communicated with FFS regarding Ms. Hartman's student loan. FFS demanded that Miss Bussell pay Ms. Hartman's student loan. Miss Bussell explained why she was not obligated to pay, and would not pay, Ms. Hartman's student loan. FFS repeatedly communicated with Miss Bussell in efforts to collect Ms. Hartman's student loan. In the course of those communications, FFS violated the FDCPA and other laws.

17.     On October 1, 2010, Miss Bussell filed a lawsuit against FFS in the United States District Court for the Western District of Michigan, Case No. 1:10-cv-967, alleging violations of the FDCPA and other laws. The lawsuit settled. On December 23, 2010, the Court entered an order dismissing the lawsuit with prejudice.

18.     Apparently, FFS returned Ms. Hartman's student loan and related account to Sallie Mae.

19.     Apparently, Sallie Mae then placed Ms. Hartman's student loan and related account with a debt collector named Central Credit Services, Inc. ("CCS") for collection.

20.     In March 2011, CCS communicated with Miss Bussell regarding Ms. Hartman's student loan. CCS demanded that Miss Bussell pay Ms. Hartman's student loan. Miss Bussell

4

explained why she was not obligated to pay, and would not pay, Ms. Hartman's student loan. CCS repeatedly communicated with Miss Bussell in efforts to collect Ms. Hartman's student loan. In the course of those communications, CCS violated the FDCPA and other laws.

21. On March 21, 2011, Miss Bussell filed a lawsuit against CCS in the United States District Court for the Western District of Michigan, Case No. 1:11-cv-281, alleging violations of the FDCPA and other laws. The lawsuit settled. On May 13, 2011, the Court entered an order dismissing the lawsuit with prejudice.

22. Apparently, CCS returned Ms. Hartman's student loan and related account to Sallie Mae.

23. Apparently, Sallie Mae then placed Ms. Hartman's student loan and related account with defendant IFP for collection.

24. On or about November 11, 2011, an IFP employee telephoned Miss Bussell and left a message on Miss Bussell's voice mail, asking Miss Bussell to telephone IFP regarding an alleged debt.

25. On or about November 11, 2011, Miss Bussell telephoned IFP and spoke with an IFP employee who identified himself as Brad. The IFP employee stated that IFP had been hired by Sallie Mae to collect Ms. Hartman's defaulted student loan in the amount of approximately \$28,303.22. The IFP employee stated that the telephone conversation was being recorded. The IFP employee stated that Miss Bussell had co-signed for Ms. Hartman's student loan. The IFP employee stated that Miss Bussell was legally obligated to pay Ms. Hartman's student loan. Miss Bussell explained in detail to the IFP employee that she had never co-signed for Ms. Hartman's student loan and was not legally obligated to pay Ms. Hartman's student loan. The IFP employee

5

stated that he had no reason not to believe Miss Bussell, but concluded, "Unfortunately, I don't know how well that's going to stand up in court." The IFP employee asked for location information regarding Ms. Hartman. Miss Bussell explained that she had lost contact with Ms. Hartman years ago. Hearing that, the IFP employee stated, "well, at this point in time, I think probably, it sounds to me like this is going to have to go before the courts to get decided one way or another." The IFP employee then stated that Sallie Mae policy required him to advise Miss Bussell that if Miss Bussell did not settle the debt with IFP, then IFP would sent the account back to Sallie Mae for legal action. The IFP employee warned Miss Bussell that Sallie Mae has three ways to extract payment from Miss Bussell to pay Ms. Hartman's student loan: (1) wage attachments; (2) asset attachments; and (3) lien on property. Miss Bussell stated that she disputes the debt. Miss Bussell stated that she wanted IFP to provide her with documentation showing that she was obligated to pay Ms. Hartman's student loan. Hearing that, the IFP employee stated: "I'm sure when this goes to the court [they will supply you with proof of the debt]. . . . Maybe the court will hold in your favor. I don't know."

26. IFP and its employee attempted to collect from Miss Bussell a debt that she does not owe.

27. IFP and its employee falsely represented and falsely implied to Miss Bussell that Sallie Mae was going to file a lawsuit against Miss Bussell to collect the alleged debt.

28. IFP and its employee made false representations to Miss Bussell regarding the character, amount and legal status of a debt.

29. IFP and its employee falsely represented and falsely implied to Miss Bussell that Miss Bussell's failure to pay the alleged debt would result in the seizure, garnishment,

6

attachment, or sale of Miss Bussell's property and wages.

30.     IFP and its employee falsely represented and falsely implied to Miss Bussell that that Sallie Mae policy required him to advise Miss Bussell that if Miss Bussell did not settle the debt with IFP, then IFP would sent the account back to Sallie Mae for legal action.

31.     IFP and its employee falsely represented and falsely implied to Miss Bussell that that if Miss Bussell did not settle the debt with IFP, then Sallie Mae has three ways to extract payment from Miss Bussell to pay Ms. Hartman's student loan: (1) wage attachments; (2) asset attachments; and (3) liens on property.

32.     IFP and its employee falsely represented and falsely implied to Miss Bussell that that if Miss Bussell did not settle the debt with IFP, then Sallie Mae had the ability to attach Miss Bussell's wages in order to pay Ms. Hartman's student loan.

33.     IFP and its employee falsely represented and falsely implied to Miss Bussell that that if Miss Bussell did not settle the debt with IFP, then Sallie Mae had the ability to attach Miss Bussell's assets in order to pay Ms. Hartman's student loan.

34.     IFP and its employee falsely represented and falsely implied to Miss Bussell that that if Miss Bussell did not settle the debt with IFP, then Sallie Mae had the ability to put a lien on Miss Bussell's property in order to pay Ms. Hartman's student loan.

35.     IFP and its employee wrongfully and falsely represented and implied to Miss Bussell that Miss Bussell could not obtain verification of the debt from IFP.

36.     IFP and its employee wrongfully and falsely represented and implied to Miss Bussell that Miss Bussell could not obtain verification of the debt from Sallie Mae.

37.     IFP and its employee wrongfully and falsely represented and implied to Miss

7

Bussell that if Miss Bussell exercised her right to dispute and demand verification of the debt, then she would be sued.

38.     IFP and its employee wrongfully and falsely represented and implied to Miss Bussell that if Miss Bussell exercised her right to dispute and demand verification of the debt, then she would be sued.

39.     IFP and its employee wrongfully and falsely represented and implied to Miss Bussell that the only way Miss Bussell will be able to obtain whatever documents Sallie Mae claim obligate Miss Bussell to pay Ms. Hartman's student loan will be when Sallie Mae sues Miss Bussell to collect the debt.

40.     It is a violation of the FDCPA for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

41.     IFP and its employee made false statements regarding the rights of a consumer to dispute a debt as afforded by the FDCPA.

42.     IFP and its employee made false statements to Miss Bussell regarding Miss Bussell's rights to dispute the debt.

43.     The IFP employee who spoke by telephone with Miss Bussell intended to speak the words he spoke to Miss Bussell.

44.     Miss Bussell continues to dispute the alleged debt.

45.     Miss Bussell continues to refuse to pay the alleged debt.

46.     Miss Bussell is represented by the undersigned attorney in connection with the defense of any attempts by Sallie Mae, IFP or any other entity to collect the disputed debt.

47.     As an actual and proximate result of the acts and omissions of defendant and its

8

employees, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1– Fair Debt Collection Practices Act

48.    Plaintiff incorporates the foregoing paragraphs by reference.

49.    Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt;

b)    Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt; and

d)    Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

9

## Count 2– Michigan Occupational Code

50.     Plaintiff incorporates the foregoing paragraphs by reference.

51.     Defendant has violated the MOC. Defendant's violations of the MOC include,

but are not necessarily limited to, the following:

a)      Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading,
        untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication
        with a debtor the following: (i) the legal status of a legal action being taken or
        threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the
        nonpayment of a debt will result in the seizure, garnishment, attachment or sale of
        the debtor's property;

c)      Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive and
        abusive method to collect a debt;

d)      Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure
        designed to prevent a violation by an employee; and

e)      Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)      Actual damages pursuant to M.C.L. § 339.916(2);

b)      Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)      Statutory damages pursuant to M.C.L. § 339.916(2); and

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

10

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: November 18, 2011

$\int \mathcal{W} \subset \bigwedge$

Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com

11